1
2
3
4
5
6

**DUANE MORRIS LLP**
Gerald L. Maatman, Jr. (*pro hac vice* forthcoming)
gmaatman@duanemorris.com
Jennifer A. Riley (*pro hac vice* forthcoming)
jariley@duanemorris.com
190 South LaSalle Street, Suite 3700
Chicago, IL 60603-3433
Telephone: +1 312 499 6700

7
8
9
10
11

**DUANE MORRIS LLP**
Nick Baltaxe (SBN 329751)
nbaltaxe@duanemorris.com
865 South Figueroa Street, Suite 3100
Los Angeles, CA  90017-5450
Telephone: +1 213 689 7400

12
13
14

Attorneys for Defendant
RADIOLOGY PARTNERS MANAGEMENT, LLC

(additional counsel on following page)

15

### IN THE UNITED STATES DISTRICT COURT

16

### FOR THE CENTRAL DISTRICT OF CALIFORNIA

17
18
19
20
21
22
23
24
25
26
27

| | |
|---|---|
| KYLE E. PETTY, an individual, on behalf of himself and others similarly situated,<br><br>            Plaintiff,<br><br>      v.<br><br>RADIOLOGY PARTNERS MANAGEMENT, LLC, a Delaware limited liability company; and DOES 1 through 50, inclusive,<br><br>            Defendants. | Case No.:  2-24-cv-02806<br><br>**DEFENDANT RADIOLOGY PARTNERS MANAGEMENT, LLC'S NOTICE OF REMOVAL OF CIVIL ACTION TO THE UNITED STATES DISTRICT COURT**<br><br>[Removed from Los Angeles Superior Court, Case No.: 24STCV05436-Complaint filed: March 4, 2024]<br><br>[*Filed concurrently with Declaration of Kimberly Sisk; and Request for Judicial Notice*] |

28

---

DEFENDANT RADIOLOGY PARTNERS MANAGEMENT, LLC'S NOTICE OF REMOVAL

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Poline Pourmorady (State Bar No. 327196)
ppourmorady@duanemorris.com
**DUANE MORRIS LLP**
750 B Street, Suite 2900
San Diego, CA 92101-4681
Telephone:  619.744.2200

1

# TABLE OF CONTENTS

**Page**

I.     BACKGROUND .................................................................................. 1

II.    TIMELINESS OF REMOVAL ........................................................... 3

III.   CLASS ACTION FAIRNESS ACT REMOVAL................................. 3

    A.    The Putative Class Exceeds 100 ............................................ 4

    B.    The Putative Class and Defendant Are Minimally Diverse.................... 4

    C.    A Member of the Putative Class Is A Foreign Citizen .......................... 4

    D.    Defendant Is a Citizen of Delaware and California ................................ 5

    E.    Doe Defendants Have No Bearing on Diversity Jurisdiction ................. 7

    F.    The Amount in Controversy Exceeds The Statutory Minimum .............. 7

        1.    Minimum Wage Violations and Overtime Violations Claims .... 11

        2.    Unpaid Meal Premium Claim........................................ 13

        3.    Unpaid Rest Period Premium Claim.............................. 15

        4.    Unreimbursed Business Expense Claim...................... 18

        5.    Plaintiff's Claims for Wage Statement Violations ..................... 19

        6.    Plaintiff's Claim for Waiting Time Penalties .............................. 21

        7.    Plaintiff's Claim for Attorneys' Fees ........................................... 22

        8.    Approximate Aggregate Amount in Controversy ....................... 23

V.     VENUE................................................................................................ 24

VI.    NOTICE OF REMOVAL TO STATE COURT AND TO PLAINTIFF......... 24

VII.   PRAYER FOR REMOVAL................................................................ 25

DEFENDANT RADIOLOGY PARTNERS MANAGEMENT, LLC'S NOTICE OF REMOVAL

1
2

# <u>TABLE OF AUTHORITIES</u>

3                                                                                          **Page(s)**

**Federal Cases**

4

5
*Abrego v. The Dow Chemical Co.*
   443 F.3d 676 (9th Cir. 2006) .................................................................................7

6

7
*Anderson v. Starbucks Corp.*
   556 F. Supp. 3d 1132 (N.D. Cal. 2020)................................................................22

8

9
*Andrade v. Beacon Sales Acquisition, Inc.*
   2019 WL 4855997 (C.D. Cal. Oct. 1, 2019) ........................................................12

10

11
*Arias v. Residence Inn by Marriott*
   936 F.3d 920 (9th Cir. 2019) ...........................................................................3, 22

12

13
*Armstrong v. Church of Scientology Int'l*
   243 F.3d 546 (9th Cir. 2000) ................................................................................4

14

15
*Brady v. Mercedes-Benz USA, Inc.*
   243 F. Supp. 2d 1004 (N.D. Cal. 2002)................................................................22

16
*Bryant v. NCR Corp.*
   284 F. Supp. 3d 1147 (S.D. Cal. 2018) .........................................................14, 17

17

18
*Coleman v. Estes Express Lines, Inc.*
   730 F. Supp. 2d 1141 (C.D. Cal. 2010), *aff'd* 631 F.3d 1010 (9th Cir.
19
   2011) .....................................................................................................................8

20
*Dart Cherokee Basin Operating Co., LLC v. Owens*
21
   135 S. Ct. 547 (2014).............................................................................................8

22
*Dart Cherokee Basin Operating Co., LLC v. Owens*
   574 U.S. 81 (2014)............................................................................................3, 9
23

24
*Davis v. HSBC Bank Nev., N.A.*
   557 F.3d 1026 (9th Cir. 2009) ...............................................................................5

25

26
*Ehrman v. Cox Commc'ns, Inc.*
   932 F.3d 1223 (9th Cir. 2019) ................................................................................8

27

28
*Elec. Indus. Serv. Bureau, Inc. v. Philadelphia Indem. Co.*
   2018 WL 7286502 (N.D. Cal. July 11, 2018) .....................................................10

DEFENDANT RADIOLOGY PARTNERS MANAGEMENT, LLC'S NOTICE OF REMOVAL

*Elizarraz v. United Rentals, Inc.*
  2019 WL 1553664 (C.D. Cal. Apr. 9. 2019) ........................................ 17

*Fong v. Regis Corp.*
  No. C 13-04497 RS, 2014 WL 26996 (N.D. Cal. Jan. 2, 2014) ........................ 22

*Franke v. Anderson Merchandisers LLC*
  2017 WL 3224656 (C.D. Cal. 2017) ........................................ 9

*Fristoe v. Reynolds Metals Co.*
  615 F.2d 1209 (9th Cir. 1980) ........................................ 7

*Galt G/S v. JSS Scandinavia*
  142 F.3d 1150 (9th Cir. 1998) ........................................ 22

*Geographic Expeditions, Inc. v. Estate of Lhotka ex rel. Lhotka*
  599 F.3d 1102 (9th Cir. 2010) ........................................ 9

*Greene v. Harley-Davidson*
  965 F.3d 767 (9th Cir. 2020) ........................................ 8

*Harris v. Best Buy Stores, L.P.*
  2016 WL 4073327, at *10 (N.D. Cal. Aug. 1, 2016), *on
  reconsideration,* 2016 WL 6248893 (N.D. Cal. Oct. 26, 2016) ........................ 10

*Henry v. Cent. Freight Lines, Inc.*
  692 F. App'x 806 (9th Cir. 2017) ........................................ 8

*Hertz Corp. v. Friend*
  130 S. Ct. 1181 (2010) ........................................ 6

*Ibarra v. Manheim Inv.'s, Inc.*
  775 F.3d 1193 (9th Cir. 2015) ........................................ 9

*Jauregui v. Roadrunner Transp. Servs., Inc.*
  28 F.4th 989 (9th Cir. 2022) ........................................ 24

*Johnson v. Columbia Properties Anchorage, LP*
  437 F.3d 894 (9th Cir. 2006) ........................................ 5

*Jordan v. Nationstar Mortg. LLC*
  781 F.3d 1178 (9th Cir. 2015) ........................................ 3

iii

*Kanter v. Warner-Lambert Co.*
    265 F.3d 853 (9th Cir. 2001) ..................................................................4-6

*Kantor v. Wellesly Galleries, Ltd.*
    704 F.2d 1088 (9th Cir. 1983) ....................................................................4

*Lara v. Trimac Transp. Servs. (Western), Inc.*
    2010 WL 3119366 (C.D. Cal. Aug. 6, 2010) ...........................................9

*Lujano v. Piedmont Airlines, Inc.*
    2023 WL 5805582 .....................................................................................13

*Lyon v. W.W. Grainger, Inc.*
    2010 WL 1753194 (N.D. Cal. Apr. 29, 2010)...................................14, 16

*McCollum v. TGI Friday's, Inc.*
    2022 WL 2663870, at *7 (C.D. Cal. June 22, 2022) ............................21

*Moppin v. Los Robles Regional Med. Ctr.*
    No. EDCV 15-1551 JGB (DTBx), 2015 WL 5618872, at *3 (C.D.
    Cal. Sept. 24, 2015) ................................................................................20

*Muniz v. Pilot Travel Centers LLC*
    2007 WL 1302504 (E.D. Cal. May 1, 2007).........................................12

*Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*
    526 U.S. 344 (1999)...................................................................................3

*Oda v. Gucci Am., Inc.*
    2015 WL 93335 (C.D. Cal. Jan. 7, 2015)..............................................17

*Ramirez v. HV Global Management Corp.*
    2022 WL 1210402 at *6 (N.D. Cal. Apr. 25, 2022).............................21

*Sanchez v. Abbott Labs.*
    2021 WL 2676057 (E.D. Cal. June 30, 2021) .......................................15

*Sandoval v. Ali*
    34 F. Supp. 3d 1031 (N.D. Cal. 2014)...................................................11

*Scherer v. Equitable Life Assur. Soc.*
    347 F.3d 394 (2d Cir. 2003) ......................................................................9

DEFENDANT RADIOLOGY PARTNERS MANAGEMENT, LLC'S NOTICE OF REMOVAL

*Soliman v. Philip Morris Inc.*
311 F.3d 966 (9th Cir. 2002) .................................................................. 7

*Stanley v. Distribution Alternatives, Inc.*
2017 WL 6209822 (C.D. Cal. Dec. 7, 2017)............................. 13, 15, 17

*Strotek Corp. v. Air Transport Ass'n of America*
300 F.3d 1129 (9th Cir. 2002) .............................................................. 6

*Tajonar v. Echosphere, LLC*
2015 WL 4064642 (S.D. Cal. July 2, 2015).......................................... 21

*Unutoa v. Interstate Hotels & Resorts, Inc.*
2015 WL 898512 (C.D. Cal. 2015) ........................................................ 9

*Zavala v. Deutsche Bank Trust Co. Americas*
2013 WL 3474760 (N.D. Cal. July 10, 2013) ........................................ 4

**California Cases**

*Caliber Bodyworks, Inc. v. Sup. Ct.*
134 Cal. App. 4th 365 (2005) .............................................................. 19

*Falk v. Children's Hospital Los Angeles*
237 Cal. App. 4th 1454 (2015).............................................. 14, 16, 18

*Kyle E. Petty v. Radiology Partners Management, LLC, et al.*
Case Number 24STCV05436 ................................................................ 1

*Murphy v. Kenneth Cole Prods., Inc.*
40 Cal. 4th 1094 (2007)......................................................... 14, 16

**Federal Statutes**

28 U.S.C. § 84(a) ................................................................................. 24

28 U.S.C. § 1332 .............................................................................. 3, 7

28 U.S.C. § 1332(d) .............................................................................. 7

28 U.S.C. § 1332(d)(2) ...................................................................... 1, 3

28 U.S.C. § 1332(d)(2)(A)..................................................................... 4

28 U.S.C. § 1332(d)(2)(B)..................................................................... 4

DEFENDANT RADIOLOGY PARTNERS MANAGEMENT, LLC'S NOTICE OF REMOVAL

28 U.S.C. §§ 1332(d)(5) ................................................................. 3

28 U.S.C. § 1332(d)(5)(B) ............................................................. 4

28 U.S.C. §§ 1332(d)(6) ............................................................ 3, 7

28 U.S.C. § 1332(d)(10) ................................................................ 5

28 U.S.C. § 1441 ......................................................................... 24

28 U.S.C. § 1441(a) ....................................................................... 7

28 U.S.C. § 1446(a) ..................................................................... 24

28 U.S.C. § 1446(b) & (c)(1) .......................................................... 3

28 U.S.C. § 1446(d) ..................................................................... 24

**State Statutes**

Cal. Bus. & Prof. Code § 17200 .............................................. 14, 16

Cal. Bus. & Prof. Code § 17208 .................................................. 11

Cal. Civ. Proc. Code § 338 ..................................................... 11, 18

Cal. Civ. Proc. Code § 340(a) ...................................................... 19

Cal. Lab. Code § 203 ............................................................. 10, 21

Cal. Lab. Code § 203(a) .............................................................. 21

Cal. Lab. Code § 226(e) ........................................................19-20, 23

Cal. Lab. Code § 226.7 .......................................................... 14, 16

Cal. Lab. Code § 512 ............................................................. 14, 16

Cal. Lab. Code § 1194 ............................................................ 11, 23

Cal. Lab. Code § 1194.3 ............................................................. 23

Cal. Lab. Code § 2802 ............................................................... 18

Cal. Lab. Code § 2802(a) ............................................................ 18

DEFENDANT RADIOLOGY PARTNERS MANAGEMENT, LLC'S NOTICE OF REMOVAL

**Rules**

Fed. R. Civ. P. 23 ........................................................................................ 9

**Regulations**

Sen. Jud. Comm. Rep., S. REP. 109-14 .......................................................... 7

**Non-Periodical Publications**

https://data.bls.gov/timeseries/CUUR0000SEED03?output_view=data ................... 19

https://www.lacourt.org/casesummary/ui/ ...................................................... 2

DEFENDANT RADIOLOGY PARTNERS MANAGEMENT, LLC'S NOTICE OF REMOVAL

1  TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL

2  DISTRICT OF CALIFORNIA AND TO PLAINTIFF AND HIS COUNSEL OF

3  RECORD:

4      **PLEASE TAKE NOTICE** that Defendant RADIOLOGY PARTNERS

5  MANAGEMENT, LLC, ("Radiology Partners" or "Defendant") hereby removes the

6  above-captioned case from the Superior Court of the State of California, County of

7  Los Angeles, to the United States District Court for the Central District of California,

8  asserting original jurisdiction under 28 U.S.C. § 1332(d)(2) (the Class Action Fairness

9  Act of 2005 ("CAFA")).

10  **I.**    **BACKGROUND**

11      1.    On March 4, 2024, Plaintiff Kyle E. Petty ("Plaintiff") filed a Class

12  Action Complaint ("Complaint) in the Superior Court of the State of California,

13  County of Los Angeles ("Superior Court"), entitled *Kyle E. Petty v. Radiology*

14  *Partners Management, LLC, et al.*, Case Number 24STCV05436. Plaintiff asserts

15  causes of action against Radiology Partners for alleged wage-and-hour violations.

16  (Declaration of Kimberly Sisk in Support of Radiology Partner's Notice of Removal

17  ("Sisk Decl." ¶ 6, Ex. A (Plaintiff's Class Action Complaint).)

18      2.    Plaintiff premises his claims on Defendant's alleged violation of the

19  California Labor Code. Specifically, Plaintiff claims that Defendant violated the

20  Labor Code by: (1) failing to pay Plaintiff and the putative class members minimum

21  wages for all hours worked; (2) failing to pay Plaintiff and the putative class

22  members all wages, including overtime; (3) failing to provide Plaintiff and the

23  putative class members with meal periods in accordance with California law; (4)

24  failing to provide Plaintiff and the putative class members with rest periods in

25  accordance with California law; (5) failing to provide Plaintiff and the putative class

26  members with accurate itemized wage statements; (6) failing to timely pay Plaintiff

27  and the putative class members wages during employment; (7) failing to pay Plaintiff

28  and the putative class members wages owed at separation; (8) failing to maintain

1

DEFENDANT RADIOLOGY PARTNERS MANAGEMENT, LLC'S NOTICE OF REMOVAL

accurate employment records; (9) failing to produce employment records; (10) failing to reimburse Plaintiff and the putative class members for all necessary business expenses; and (11) unfair competition.  (*Id.* ¶¶ 57-145.)

3.  In the Complaint, Plaintiff seeks to certify a putative class (the "California Class") consisting of "[a]ll individuals employed by Defendants at any time during the period of four (4) years prior to the filing of this lawsuit and ending on a date as determined by the Court ("the Class Period"), and who have been employed as non-exempt hourly employees within the State of California."  (*Id.* ¶ 44.)  The class period, pursuant to Plaintiff's definition of the putative class, would extend from March 4, 2020, to present.

4.  On March 7, 2024, Defendant was served via personal service and received a copy of the Complaint, Summons, Civil Case Cover Sheet and Addendum, Alternative Dispute Resolution (ADR) Information Package, and Notice of Case Assignment.  (Sisk Decl. ¶ 6.)  A true and correct copy of the contents of this service package are attached as **Exhibits A through E** to the Declaration of Kimberly Sisk in Support of Radiology Partner's Notice of Removal.

5.  On March 7, 2024, the Court posted a Certificate of Mailing for Court Order Re: Initial Status Conference Order.  On March 7, 2024, the Court posted an Initial Status Conference Order.  On March 7, 2024, the Court posted a Minute Order regarding the Initial Status Conference Order.  On March 12, 2024, Plaintiff filed a Proof of Service.  On March 13, 2024, the Court filed the Notice of Initial Status Conference and ISC order.  A true and correct copy of the aforementioned documents filed to the Superior Court docket, which were accessed from https://www.lacourt.org/casesummary/ui/ on March 28, 2024, are attached to Radiology Partners' Request for Judicial Notice as **Exhibits F through J**.

6.  The Los Angeles County Superior Court's electronic docket indicates a Case Management Conference is set for May 15, 2024, at 11:00 a.m.

2

## II.    **TIMELINESS OF REMOVAL**

7.    This Notice of Removal is timely filed because it is filed less than one year from the date this action was commenced and within thirty (30) days of service upon Defendant.  *See* 28 U.S.C. § 1446(b) & (c)(1); *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 353-56 (1999) (thirty-day removal period begins when defendant is formally served).

## III.    **CLASS ACTION FAIRNESS ACT REMOVAL**

8.    This Court has original subject-matter jurisdiction over this action under the Class Action Fairness Act ("CAFA"), codified in relevant part at 28 U.S.C. § 1332(d)(2), because: (1) the action involves 100 or more putative class members; (2) at least one class member is a citizen of a state different from that of at least one defendant; and (3) the amount in controversy exceeds $5,000,000, exclusive of interest and costs.  28 U.S.C. §§ 1332(d)(2), (d)(5), & (d)(6).

9.    Under CAFA, a removing defendant need not submit any evidence of the facts establishing jurisdiction in its notice of removal.  *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 84 (2014) (holding a notice of removal "need not contain evidentiary submissions").  Rather, "[a] defendant's notice of removal need include only a plausible allegation that the jurisdictional facts exist." *Id.* at 89.  Evidence is required "only when plaintiff contests, or the court questions the defendant's allegation."  *Id.*

10.    The United States Supreme Court in *Dart Cherokee* held that "no antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court," adding that "CAFA should be read with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant."  *Id.*  Following *Dart Cherokee*, the Ninth Circuit has directed district courts to "interpret CAFA's provisions under section 1332 broadly in favor of removal."  *Jordan v. Nationstar Mortg. LLC*, 781 F.3d 1178, 1184 (9th Cir. 2015); *see Arias v. Residence Inn by*

DEFENDANT RADIOLOGY PARTNERS MANAGEMENT, LLC'S NOTICE OF REMOVAL

*Marriott*, 936 F.3d 920 (9th Cir. 2019) (holding that courts may not remand where notice of removal plausibly alleges the basis for removal, without giving the defendant an opportunity to prove that jurisdictional requirements are satisfied).

### A.    The Putative Class Exceeds 100

11.    The number of putative class members in this action is greater than 100. 28 U.S.C. § 1332(d)(5)(B).  Indeed, Plaintiff's alleged employer, Defendant, has employed approximately 183 hourly non-exempt employees in the State of California during the relevant time period.  (Sisk Decl. ¶ 10.)

### B.    The Putative Class and Defendant Are Minimally Diverse

12.    CAFA requires only minimal diversity for purposes of establishing federal jurisdiction.  That is, at least one putative class member must be a citizen of a state different from any named defendant.  28 U.S.C. § 1332(d)(2)(A).  Additionally, minimal diversity is found if one putative class member is a citizen of a foreign state and any defendant is a citizen of a state.  *Id.* § 1332(d)(2)(B).  In this case, multiple members of the putative class are foreign nationals while Defendant is a citizen of Delaware and California.  (Sisk Decl. ¶¶ 4-5, 8.)

### C.    A Member of the Putative Class Is A Foreign Citizen

13.    For diversity purposes, a person is a "citizen' of the state in which he or she is domiciled.  *Kantor v. Wellesly Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983).  A person's domicile is the place where he or she resides with the intent to remain indefinitely.  *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001) ("A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return.").  Citizenship is determined by the individual's domicile at the time the lawsuit is filed.  *Armstrong v. Church of Scientology Int'l*, 243 F.3d 546, 546 (9th Cir. 2000) (citing *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986)); *Zavala v. Deutsche Bank Trust Co. Americas*, 2013 WL 3474760, at *3 (N.D. Cal. July 10, 2013) (holding that, where complaint alleges plaintiff resides in California, "in the absence of evidence to the contrary, [plaintiff]

is a California citizen for diversity purposes").  Additionally, in order to be a citizen of a state, a person must be a citizen of the United States.  *Kanter,* 265 F.3d at 857 ("To be a citizen of a State, a natural person must first be a citizen of the United States.").

14.     Based on records maintained by Defendant, Defendant employed individuals who would be included in the putative class definition of "all current and former California employees of Defendants since the date four (4) year[s] prior to the filing of this Complaint," who are not citizens of the United States.  (Sisk Decl. ¶ 8.) Specifically, during this class period, Defendant employed citizens of Mexico and the Philippines who were not citizens of the United Stated but were authorized to work in the United States.  (*Id.*)  Accordingly, at least one individual member of the alleged putative class is a citizen of a foreign state and, therefore, not a citizen of California.

### D.     Defendant Is a Citizen of Delaware and California

15.     Plaintiff names Radiology Partners Management, LLC as a defendant. As a general rule, a limited liability company is a citizen of every state of which its members are citizens.  *See Johnson v. Columbia Properties Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006) ("LLCs resemble both partnerships and corporations. Notwithstanding LLCs' corporate traits, however, every circuit that has addressed the question treats them like partnerships for the purposes of diversity jurisdiction. . . . [A]n LLC is a citizen of every state of which its owners/members are citizens.").

16.     For purposes of CAFA's minimal diversity requirement, however, an "unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized."  28 U.S.C. § 1332(d)(10); *see Davis v. HSBC Bank Nev., N.A.*, 557 F.3d 1026, 1032 n.13 (9th Cir. 2009) ("For qualifying class actions such as this one, CAFA abrogates the traditional rule that an unincorporated association shares the citizenship of each of its members for diversity purposes.").

DEFENDANT RADIOLOGY PARTNERS MANAGEMENT, LLC'S NOTICE OF REMOVAL

17.     A corporation's principal place of business for diversity purposes is normally "the place where the corporation maintains its headquarters." *Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1193 (2010).  In *Hertz*, the U.S. Supreme Court held that the "principal place of business" of a corporation is best interpreted as a corporation's "nerve center," which "ordinarily equates . . . with a corporation's headquarters." *Id.*  The Court explained that "in practice [the nerve center] should normally be the place where the corporation maintains its headquarters – provided that the headquarters is the actual center of direction, control, and coordination . . . and not simply an office where the corporation holds its board meetings (for example, attended by directors and officers who have traveled there for the occasion)." *Id.* at 1192-93, 1195 (distinguishing situation where alleged "nerve center" is "nothing more than a mail drop box, a bare office with a computer, or the location of an annual executive retreat").

18.     For removal purposes, citizenship is measured both when the action is filed and when it is removed.  *Strotek Corp. v. Air Transport Ass'n of America*, 300 F.3d 1129, 1131 (9th Cir. 2002); *Kanter*, 265 F.3d at 857.

19.     At all times since Plaintiff commenced this lawsuit, Radiology Partners Management, LLC has been a limited liability company formed under the laws of the State of Delaware with its principle place of business in the State of California. (Sisk Decl. ¶¶ 4-5.)  Defendant has maintained its corporate headquarters in El Segundo, California.  (*Id.* ¶ 5.)  Because Defendant was formed under the laws of the State of Delaware and maintains its principal place of business in the State of California, it is a citizen of the State of California and the State of Delaware.

20.     Accordingly, CAFA's diversity requirement is satisfied because at least one putative class member is a citizen of a foreign state and Defendant is a citizen of California and Delaware.

DEFENDANT RADIOLOGY PARTNERS MANAGEMENT, LLC'S NOTICE OF REMOVAL

### E.    Doe Defendants Have No Bearing on Diversity Jurisdiction

21.    Pursuant to 28 U.S.C. § 1441(a), the residence of fictitious and unknown defendants should be disregarded for purposes of establishing removal jurisdiction under 28 U.S.C. § 1332.  *Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209, 1213 (9th Cir. 1980) (holding that unnamed defendants are not required to join in a removal petition); *Soliman v. Philip Morris Inc.*, 311 F.3d 966, 971 (9th Cir. 2002) ("[C]itizenship of fictitious defendants is disregarded for removal purposes and becomes relevant only if and when the plaintiff seeks leave to substitute a named defendant.").  Thus, the existence of Doe Defendants 1 through 10 does not deprive this Court of jurisdiction.  *Abrego v. The Dow Chemical Co.*, 443 F.3d 676, 679-80 n.4 (9th Cir. 2006).

### F.    The Amount in Controversy Exceeds The Statutory Minimum

22.    Under CAFA, the claims of the individual members in a class action are aggregated to determine if the amount in controversy exceeds the sum or value of $5,000,000.  28 U.S.C. § 1332(d)(6).  Congress intended federal jurisdiction to be appropriate under CAFA "if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (*e.g.*, damages, injunctive relief, or declaratory relief)."  Sen. Jud. Comm. Rep., S. REP. 109-14, at 42.  Moreover, any doubts regarding the maintenance of interstate class actions in state or federal court should be resolved in favor of federal jurisdiction.  S. Rep. 109-14, at 42-43 ("[I]f a federal court is uncertain about whether 'all matters in controversy' in a purported class action 'do not in the aggregate exceed the sum or value of $5,000,000, the court should err in favor of exercising jurisdiction over the case . . . . Overall, [the] new section 1332(d) is intended to expand substantially federal court jurisdiction over class actions.  Its provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.").

7

23.     To establish that the amount in controversy exceeds the jurisdictional amount, the defendant must only make a plausible claim that the amount in controversy exceeds that amount.  *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547 (2014).  Where, as here, Plaintiff does not plead a specific amount of damages, a defendant need only "plausibly show that it is reasonably possible that the potential liability exceed $5 million."  *Greene v. Harley-Davidson*, 965 F.3d 767, 772 (9th Cir. 2020).  A defendant can establish the amount in controversy by "providing only a short and plain statement of the grounds for removal."  *Ehrman v. Cox Commc'ns, Inc.*, 932 F.3d 1223, 1227 (9th Cir. 2019).

24.     As the Ninth Circuit has explained, "the amount in controversy is the 'amount at stake in the underlying litigation,'" which "does not mean likely or probable liability; rather, it refers to possible liability."  *Id.* (*quoting Gonzales v. CarMax Auto Superstores, LLC*, 840 F.3d 644, 648 (9th Cir. 2016) (emphasis omitted)).  "In determining the amount in controversy, the Court accepts the allegations contained in the complaint as true and assumes the jury will return a verdict in the plaintiff's favor on every claim."  *Henry v. Cent. Freight Lines, Inc.*, 692 F. App'x 806, 807 (9th Cir. 2017); *Coleman v. Estes Express Lines, Inc.*, 730 F. Supp. 2d 1141, 1148 (C.D. Cal. 2010) ("In deciding the amount in controversy the Court looks to what the plaintiff has alleged, not what the defendants will owe."), *aff'd* 631 F.3d 1010 (9th Cir. 2011).

25.     While Defendant denies any liability as to Plaintiff's claims, the amount in controversy as alleged in the Complaint exceeds $5,000,000, exclusive of interest and costs.  Defendant bases all calculations supporting the amount in controversy on the Complaint's allegations (along with other documents identified herein), assuming, without any admission, the truth of the allegations (which Defendant disputes).  Likewise, Defendant bases these calculations on the putative class alleged in the Complaint, and in no way indicates or concedes that class treatment is appropriate in this case, that Plaintiff has standing to represent any class, or that the

8

class proposed would meet the requirements set forth in Rule 23 of the Federal Rules of Civil Procedure.  Defendant expressly reserves the right to challenge Plaintiff's claims, adequacy, and standing to represent any class, Plaintiff's class definition, Plaintiff's ability to meet the requirements of Rule 23, and the calculation of damages or any other monetary relief in all respects.

26.    Because Plaintiff has not alleged a particular dollar figure regarding the relief sought, reasonable estimates of the alleged amount in controversy are appropriate.  *See Ibarra v. Manheim Inv.'s, Inc.*, 775 F.3d 1193, 1198 (9th Cir. 2015).  Moreover, where a plaintiff alleges a "uniform policy and systematic scheme of wage abuse," without including "any modifying language to suggest less than uniform violations," courts have found that the amount in controversy can be satisfied by assuming a 100% violation rate.  *Franke v. Anderson Merchandisers LLC*, 2017 WL 3224656, at *2 (C.D. Cal. 2017) (distinguishing *Ibarra*); *Unutoa v. Interstate Hotels & Resorts, Inc.*, 2015 WL 898512, at *2-3 (C.D. Cal. 2015) ("Removing defendants will inevitably rely on some assumptions to support removal; a removing defendant is not required to go so far as to prove Plaintiff's case for him by proving the actual rates of violation.").

27.    As the U.S. Supreme Court has explained, a defendant's amount-in-controversy allegations on removal are entitled to the same weight given those alleged by a plaintiff in its pleadings.  *Dart Cherokee Basin Operating Co.*, 574 U.S. at 88.  As a result, the effect of any affirmative defenses potentially reducing the amount in controversy cannot be considered when determining federal jurisdiction. *Geographic Expeditions, Inc. v. Estate of Lhotka ex rel. Lhotka*, 599 F.3d 1102, 1108 (9th Cir. 2010); *Scherer v. Equitable Life Assur. Soc.*, 347 F.3d 394, 397-398 (2d Cir. 2003) (holding that affirmative defenses may not be used to "whittle down the amount in controversy"); *Lara v. Trimac Transp. Servs. (Western), Inc.*, 2010 WL 3119366, at *3 (C.D. Cal. Aug. 6, 2010) ("[A]ffirmative defenses, counterclaims,

9

and potential offsets may not be invoked to demonstrate the amount-in-controversy is actually less than the jurisdictional minimum.").

28.    In this case, Plaintiff seeks damages on all of his claims except one – the eleventh cause of action for the alleged violation of the UCL. "Plaintiffs who prevail under the UCL are generally limited to injunctive relief and restitution. Plaintiffs may not receive damages . . . or attorneys fees." *Elec. Indus. Serv. Bureau, Inc. v. Philadelphia Indem. Co.*, 2018 WL 7286502, at *5 (N.D. Cal. July 11, 2018) (internal quotation marks and citation omitted).  Thus, under the UCL, Plaintiff seeks and allegedly **could** recover monetary relief in the form of restitution.  The only alleged claim for which Plaintiff cannot seek monetary relief under the UCL is his claim for waiting time penalties.  *See Harris v. Best Buy Stores, L.P.*, 2016 WL 4073327, at *10 (N.D. Cal. Aug. 1, 2016), *on reconsideration,* 2016 WL 6248893 (N.D. Cal. Oct. 26, 2016) (noting "UCL claim may not rely on § 203 as a basis").

29.    Plaintiff seeks the following monetary damages on behalf of the putative class:  (1) unpaid wages due to Defendant's failure to pay for all hours worked (Ex. A., Compl. ¶ 69); (2) overtime wages due to Defendant's alleged failure to pay overtime (*Id.* ¶ 82); (3) premiums as a result of Defendant's failure to provide meal periods (*Id.* ¶ 88); (4) premium as a result of Defendant's failure to provide rest periods (*Id.* ¶ 95); (5) penalties as a result of Defendant's alleged failure to provide accurate itemized wage statements (*Id.* ¶ 103); (6) penalties as a result of Defendant's alleged failure to pay wages timely during employment (*Id.* ¶ 107); (7) penalties as a result of Defendant's alleged failure to pay wages due at the time of separation (*Id.* ¶ 115); (8) penalties as a result of Defendant's alleged failure to maintain accurate employment records (*Id.* ¶ 122); (9) penalties as a result of Defendant's failure to produce employment records (*Id.* ¶¶ 129-130); (10) expenses as a result of Defendant's alleged failure to provide reimbursement for necessary business expenses (*Id.* ¶ 135); and (11) penalties as a result of Unfair Competition claims.  (*Id.* ¶ 145.)

DEFENDANT RADIOLOGY PARTNERS MANAGEMENT, LLC'S NOTICE OF REMOVAL

### 1.    Minimum Wage Violations and Overtime Violations Claims

30.    Plaintiff seeks payment for alleged unpaid wages and overtime violations as a result of Defendant's purported "***uniform policy and practice***" of not paying Plaintiff and putative class members "for all hours worked" or their proper overtime wages.  (*Id.* ¶¶ 19, 58, 73-74.)  Specifically, Plaintiff alleges that "Defendants had a ***consistent*** policy of not paying Employees wages for all hours worked, including by requiring off the clock work" and "hours at their required regular, overtime, and double-time rates."  (*Id.* ¶¶ 73-74.)  Plaintiff claims he worked "at least forty hours a week" despite only being scheduled for 40-hour work weeks.  (*Id.* ¶¶ 11-12.)  Plaintiff states that he and other putative class members were not compensated for time waiting to record their time before and after their shifts, for time responding to emails after being required to clock out, or for time spent training.  (*Id.* ¶ 12.)  Plaintiff additionally alleges that he and other putative class members suffered minimum wage violations due to "timekeeping systems that were faulty and inaccurate."  (*Id.*)

31.    California Labor Code section 1194 permits "any employee receiving less than the legal minimum wage or the legal overtime compensation . . . to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit."  Such amounts "are recoverable as restitution under the UCL," despite damages being unavailable under the statute.  *See, e.g.*, *Sandoval v. Ali*, 34 F. Supp. 3d 1031, 1044 (N.D. Cal. 2014).

32.    While the statute of limitations for recovery for minimum wage and overtime violations under Labor Code section 1194 is three years, Cal. Civ. Proc. Code § 338, in this case Plaintiff alleges a claim for pay as part of his UCL claim. (*See* Compl. ¶ 136.)  According to the allegations of his Complaint, the four-year statute of limitations applies for purposes of removal.  Cal. Bus. & Prof. Code §

17208.  Accordingly, Plaintiff's proposed class period for the overtime claims is from **March 4, 2020, to present**.

33.    The Complaint is silent as to the amount of allegedly unpaid overtime hours worked or unpaid wages attributable to overtime, thereby precluding precise estimates of the amount in controversy.  *See generally* Compl.; *see also Muniz v. Pilot Travel Centers LLC*, 2007 WL 1302504, at *4 (E.D. Cal. May 1, 2007).

34.    From March 4, 2020, to March 14, 2024, there were approximately 183 current and former non-exempt hourly employees who are or were employed by Defendant in California.  (Sisk Decl. ¶ 10.)  These 183 current and former employees worked a total of approximately 13,571 workweeks.  (*Id*.)  The average hourly rate of pay for non-exempt, hourly employees during the relevant time period was $21.24, and these employees had an average overtime rate of pay of $31.86.  (*Id*. ¶ 11.)

35.    For purposes of calculating the amount in controversy under CAFA removal, an estimate of 2.5 hours of unpaid minimum wage work and 2.5 hours of unpaid overtime work a week is a conservative estimate in light of broad allegations of a policy and practice to underpay employees – let alone claims of purposeful reduction of hours to prevent payment of overtime and failing to include all forms of remuneration in the regular rate of pay analysis.  Indeed, the Ninth Circuit and numerous district courts have held that an estimate of at approximately 120-150 minutes of overtime per class member per week is appropriate in light of Plaintiff's allegations.  *See, e.g.*, *Muniz v. Pilot Travel Centers LLC*, 2007 WL 1302504, at *4 (E.D. Cal. May 1, 2007) (holding that, because plaintiff included no fact-specific allegations regarding overtime, a 100% estimation for labor code violations for the putative class is proper); *Andrade v. Beacon Sales Acquisition, Inc.*, 2019 WL 4855997, at *4 (C.D. Cal. Oct. 1, 2019) (finding assumptions of two hours of unpaid overtime a week were reasonable where the violation rate was "grounded in the broad allegation that these violations occurred as matters of policy and/or practice …

12

DEFENDANT RADIOLOGY PARTNERS MANAGEMENT, LLC'S NOTICE OF REMOVAL

and allegations involving defendants' various schemes to underpay employees"); *Lujano v. Piedmont Airlines, Inc.*, 2023 WL 5805582, at *6 (finding assumption of two hours of unpaid overtime a week reasonable given the plaintiff's allegation that defendants engaged in "systematic illegal employment practices" and a "pattern of practice" of committing overtime violations"); *Stanley v. Distribution Alternatives, Inc.*, 2017 WL 6209822, at *2 (C.D. Cal. Dec. 7, 2017) (denying motion to remand where, "[f]or the at-controversy overtime wages, [defendant] assume[d] that each of the class members worked two hours of overtime each week during the class period").

36.     Although Defendant denies that Plaintiff (or any putative class member) is entitled to any unpaid overtime wages, assuming each class member is owed 60 minutes of unpaid wages per day (30 of those minutes calculated at the average hourly rate and the other 30 minutes calculated at the average overtime rate), the amount in controversy the amount in controversy would be approximately **$1,801,550.25** [(13,571 Total Work Weeks * 2.5 hours * $21.24 Average Hourly Rate) + (13,571 Total Work Weeks * 2.5 hours * $31.86 Average Hourly Overtime Rate) = $**1,801,550.25**].

### 2.     Unpaid Meal Premium Claim

37.     Plaintiff alleges that Defendant "***uniformly*** applied policies of not providing all required meal periods to" Plaintiff and the putative class.  (*See* Compl. ¶ 25.)  Specifically, Plaintiff and the California class were "required … to prioritize work over taking proper meal periods" and "[m]eal periods were ***often*** not properly provided, as work demands impermissibly shortened their breaks" and that violations "***systematically*** occurred."  (*Id.* ¶¶ 21, 25 (emphasis added).)  Specifically, Plaintiff alleges that, due to demanding workloads, "Defendants' managers required Plaintiff and the Class members to prioritize work over taking proper meal periods" and "made no effort to even schedule or otherwise account for time for Plaintiff and the Class members to use for duty-free, net thirty minute meal periods."  (*Id.* ¶ 21.)

DEFENDANT RADIOLOGY PARTNERS MANAGEMENT, LLC'S NOTICE OF REMOVAL

38.    California law provides that "[a]n employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes."  Cal. Lab. Code § 512. Section 512 further provides that "[a]n employer may not employ an employee for a work period of more than 10 hours per day without providing the employee with a second meal period of not less than 30 minutes."  California Labor Code § 226.7 requires employers to pay an extra hour's pay to employees who are not provided full or timely meal periods.  An employee is entitled to an additional hour's wages per day, for both a rest and meal period violation each day.  *Lyon v. W.W. Grainger, Inc.*, 2010 WL 1753194, at *4 (N.D. Cal. Apr. 29, 2010) (noting California Labor Code § 226.7 provides recovery for one meal break violation per work day and one rest break violation per work day).

39.    While the statute of limitations for recovery for meal period premium pay under California Labor Code § 226.7 is three years, *Murphy v. Kenneth Cole Prods., Inc.*, 40 Cal. 4th 1094, 1099 (2007) ("[T]he remedy provided in Labor Code section 226.7 constitutes a wage or premium pay and is governed by a three-year statute of limitations."), the statute of limitations is extended to four years when a plaintiff pursues an action for restitution under the UCL.  *See Falk v. Children's Hospital Los Angeles*, 237 Cal. App. 4th 1454, 1462, n.12 (2015) ("[A]ctions for restitution and under Business and Professions Code section 17200 are subject to a four-year statute of limitation.").  Accordingly, the proposed class period for the unpaid meal period premium claim is from **March 4, 2020, to present**.

40.    As noted above, from March 4, 2020, to March 14, 2024, the putative class members worked a total of approximately 13,571 workweeks – i.e., approximately 6,786 pay periods.  (Sisk Decl. ¶¶ 10,12.)

41.    Based on Plaintiff's allegations of "systematic" meal period issues, an estimated violation rate of two unpaid meal period premiums every week per class member is reasonable.  *See Bryant v. NCR Corp.*, 284 F. Supp. 3d 1147, 1151 (S.D.

Cal. 2018) (concluding a 60% violation rate for meal periods and a 30% violation rate for rest periods is reasonable); *Sanchez v. Abbott Labs.*, 2021 WL 2676057, at 4-5 (E.D. Cal. June 30, 2021) (holding that a 60 percent violation rate for meal period violations is reasonable when plaintiff alleged a "pattern and practice" of meal period violations); *Stanley v. Distrib. Alts., Inc.*, 2017 WL 6209822, at *2 (C.D. Cal. Dec. 7, 2017) (finding assumption of three violations per week reasonable where the complaint alleged defendant "engaged in a 'pattern and practice' of wage and hour violations" but provides almost no allegations concerning the frequency of the alleged violations). Defendant's assumption of two violations in every five work days (assuming a 5 day-a-week workweek) – or two violations every five meal periods - represents an assumed violation rate of approximately 40% on a claim of "uniform" violations by the employer.

42.     Assuming a violation rate of two uncompensated, non-complaint meal periods every week, as supported by the language in the Complaint, Plaintiff asserts the amount in controversy for this claim is **$576,496.08** ($21.24/hour (one hour of premium pay) x 13,571 workweeks x 2 instances a week = **$576,496.08**].

43.     Defendant's estimates are conservative. Each estimate is arguably less frequent than Plaintiff suggests with his allegations that Defendant had a "policy and practice" of denying meal periods, that Class Members "uniformly" and "often" missed their meal periods, and that violations systematically occurred. (*See* Compl. ¶¶ 21, 22, 25.)

### 3.     Unpaid Rest Period Premium Claim

44.     According to the Complaint, Plaintiff and the putative class members "were ***systematically required*** by Defendants to work through or during [rest] breaks, and were not provided with one hour's wages in lieu thereof." (Ex. A., Compl. ¶ 30 (emphasis added).) Specifically, "[g]iven the work demands, understaffing, and pressure from Defendants' management, Plaintiff and the Class members were ***compelled*** to not take rest breaks despite working extended shifts."

(*Id.* ¶ 28 [emphasis added]).  As a result, Plaintiff claims that Defendants violated the Labor Code and seeks relief in the form of, *inter alia*, premium wages for missed rest periods.  (*Id.* ¶ 95.)  Plaintiff alleges that this unlawful policy was "uniformly applied."  (*Id.* ¶ 28.)

45.     California law provides that "[a]n employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes."  Cal. Lab. Code § 512. Section 512 further provides that "[a]n employer may not employ an employee for a work period of more than 10 hours per day without providing the employee with a second meal period of not less than 30 minutes."  California Labor Code § 226.7 requires employers to pay an extra hour's pay to employees who are not provided full or timely meal periods.  An employee is entitled to an additional hour's wages per day, for both a rest and meal period violation each day.  *Lyon v. W.W. Grainger, Inc.*, 2010 WL 1753194, at *4 (N.D. Cal. Apr. 29, 2010) (noting California Labor Code § 226.7 provides recovery for one meal break violation per work day and one rest break violation per work day).

46.     While the statute of limitations for recovery for rest period premium pay under California Labor Code § 226.7 is three years, *Murphy v. Kenneth Cole Prods., Inc.*, 40 Cal. 4th 1094, 1099 (2007) ("[T]he remedy provided in Labor Code section 226.7 constitutes a wage or premium pay and is governed by a three-year statute of limitations."), the statute of limitations is extended to four years when a plaintiff pursues an action for restitution under the UCL.  *See Falk v. Children's Hospital Los Angeles*, 237 Cal. App. 4th 1454, 1462, n.12 (2015) ("[A]ctions for restitution and under Business and Professions Code section 17200 are subject to a four-year statute of limitation.").  Accordingly, the proposed class period for the unpaid rest period premium claim is from **March 4, 2020, to present**.

DEFENDANT RADIOLOGY PARTNERS MANAGEMENT, LLC'S NOTICE OF REMOVAL

47.     As noted above, from March 4, 2020, to March 14, 2024, the putative class members worked a total of approximately 13,571 workweeks – *i.e.*, approximately 6,786 pay periods.  (Sisk Decl. ¶¶ 10, 12.)

48.     Based on Plaintiff's allegations of "uniform" rest period issues and "systemic" rest period violations, an estimated violation rate of three unpaid rest period premiums every week per class member is reasonable.  *See Bryant v. NCR Corp.*, 284 F. Supp. 3d 1147. 1151 (S.D. Cal. 2018 (concluding a 60% violation rate for meal periods and a 30% violation rate for rest periods is reasonable); *Stanley v. Distrib. Alts., Inc.*, 2017 WL 6209822, at *2 (C.D. Cal. Dec. 7, 2017) (finding assumption of three violations per week reasonable where the complaint alleged defendant "engaged in a 'pattern and practice' of wage and hour violations" but provides almost no allegations concerning the frequency of the alleged violations); *Oda v. Gucci Am., Inc.*, 2015 WL 93335, at *5 (C.D. Cal. Jan. 7, 2015) (finding defendant's assumption of 2.5 missed rest periods a week reasonable where plaintiff's complaint alleged that defendant maintained a policy or practice of not paying meal or rest premiums, that class members sometimes did not receive all of their meal periods and that not all rest periods were given timely);  *Elizarraz v. United Rentals, Inc.*, 2019 WL 1553664, at *4 (C.D. Cal. Apr. 9. 2019) (holding that a 25 percent violation rate for rest periods, or 2.5 missed rest periods a week, is reasonable when Plaintiff alleged a "pattern and practice" of requiring the class to work during rest periods).

49.     Assuming a violation rate of three uncompensated, non-complaint rest periods every week, as supported by the language in the Complaint, the amount in controversy for this claim is **$864,744.12** ($21.24/hour (one hour of premium pay) x 13,571 weeks x 3 instances a week = **$864,744.12**].  Defendant's assumption of three violations in every five work days (assuming a 5 day-a-week workweek) – or three violations in every ten rest periods -  represents an assumed violation rate of approximately 30% on a claim of "uniform" violations by the employer.

17

50.     Defendant's estimates are conservative.  Each estimate is arguably less frequent than Plaintiff suggests with his allegations that Defendant had a "policy and practice" of denying rest periods that led to Class Members systematically not being provided a rest break.  (*See* Compl. ¶¶ 27, 30.)

### 4.     Unreimbursed Business Expense Claim

51.     Plaintiff claims that Defendant failed to reimburse Plaintiff and Defendant's California employees for necessary work-related expenses such as use of personal cell phone and personal computer, office equipment, and home internet due to his remote work status.  (Ex. A, Compl. ¶¶ 11, 132.)  Plaintiff seeks to recover from Defendant reimbursement for these expenditures incurred by himself and the putative class members.  (*Id.* ¶135.)

52.     Under California law, an employer has a statutory obligation to "indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer, even though unlawful, unless the employee, at the time of obeying the directions, believed them to be unlawful."  Cal. Labor Code § 2802(a).

53.     While the statute of limitations for recovery for unpaid business expenses under California Labor Code § 2802 pay is three years, Cal. Civ. Proc. Code § 338, the limitations period is extended to four years when a plaintiff seeks restitution for the Labor Code violations.  *Falk*, 237 Cal. App. 4th at 1462, n.12. Accordingly, the proposed class period for the unreimbursed business expenses claim is from March 4, 2020, to present.

54.     During the period of March 4, 2020, to present, there were approximately 183 potential class members, who worked a total of approximately 13,571 workweeks.  (Sisk Decl. ¶ 10.)  That number of weeks worked equates to approximately 3,132 total months worked (13,571 weeks worked x (12 months per year/52 weeks per year)).

DEFENDANT RADIOLOGY PARTNERS MANAGEMENT, LLC'S NOTICE OF REMOVAL

55.    Assuming each putative class member during the limitations period may recover cell phone expenses in the amount of $3 per month, the amount in controversy for the unpaid business expenses would equal no less than **$9,395.31** ($3/month x 3,132 months).

56.    Defendant's estimate is conservative.  For purposes of showing the amount in controversy for alleged failure to reimburse cell phone expenses, there is a wide variety of cell phone plans available, with different promotions and from different providers.  According to the U.S. Bureau of Labor Statistics, the average monthly cell phone services charge for the time period of March 2020 to March 2024 is approximately $47.64 per month.  U.S. Bureau of Labor Statistics, Databases, Tables & Calculators by Subject: Wireless telephone services in U.S. city average, all urban consumers, not seasonally adjusted, available at https://data.bls.gov/timeseries/CUUR0000SEED03?output_view=data (last accessed March 28, 2024).  Assuming employees use their cell phones for business purposes for only approximately 6.4% of the time during each month, their expenses would be approximately $3 per month.

### 5.    Plaintiff's Claims for Wage Statement Violations

57.    Plaintiff alleges that Defendant failed to provide "timely, accurate, and itemized wage statements" to Plaintiff and the putative class members.  (Ex. A., Compl. ¶ 36.)  Based on this alleged violation, Plaintiff claims that he and other class members are entitled to penalties pursuant to Labor Code § 226(e).  (*Id.* ¶ 103.)

58.    Labor Code § 226(e) provides a minimum of $50 for the initial violation as to each employee, and $100 for each further violation as to each employee, up to a maximum penalty of $4,000 per employee.  The statute of limitations for recovery of penalties under Labor Code § 226(e) is one year.  *Caliber Bodyworks, Inc. v. Sup. Ct.,* 134 Cal. App. 4th 365, 376 (2005); *Cal. Civ. Proc. Code* § 340(a).  For purposes of this Notice of Removal, Defendant will use March 4, 2023 (i.e., one year before

the date of the filing of the Complaint) through March 14, 2024, as the relevant period for this claim.

59. In order to calculate a conservative amount in controversy for Plaintiff's wage statement claim, Defendant assumes, but does not admit, that all putative class members did not receive an accurate wage statement for all pay periods worked during the one-year statute of limitations for this claim. *See Moppin v. Los Robles Regional Med. Ctr.*, No. EDCV 15-1551 JGB (DTBx), 2015 WL 5618872, at *3 (C.D. Cal. Sept. 24, 2015) (concluding a 100% violation rate was justified because the plaintiff asserted in her complaint that "at all relevant times herein, defendants intentionally and willfully failed to furnish plaintiff and the class members with accurate wage statements"). This assumption is reasonable given that Plaintiff alleges that Defendant "knowing[ly] and intentional[ly] fail[ed] to provide [the Class Members] with wage and hour statements." (Ex. A., Compl. ¶ 100.) Further, given the various violations alleged by Plaintiff that are purportedly part of a larger, systemic set of wage-and-hour violations, assuming a 100% violation is reasonable in light of the fact that Plaintiff's wage statement claim is derivative of his unpaid minimum wage, unpaid overtime wage, and unpaid meal and rest period premium claims.

60. As set forth above, during the period of March 4, 2020 to March 14, 2024, there were approximately 183 potential class members, who worked a total of approximately 6,786 pay periods. (Sisk Decl. ¶¶ 10, 12.) The estimated number of pay periods during the year prior to the filing of the Complaint through March 14, 2024, would equate to approximately 1,697 total pay periods worked (6,786 pay periods worked / 4). This results in approximately **$160,550.00** in potential statutory violations pursuant to Labor Code section 226(e). [(183 initial violations x $50) + (1,514 subsequent violations x $100) = **$160,550.00**.]

### 6.    Plaintiff's Claim for Waiting Time Penalties

61.    Plaintiff's Complaint alleges that Defendant had "a uniform and consistent policy of failing" to timely pay wages due, in violation of California Labor Code sections 203.  (Ex. A., Compl. ¶ 39.)  On these grounds, Plaintiff seeks "waiting time penalties" under California Labor Code § 203.  (*Id.* ¶ 114.)

62.    Under California Labor Code § 203, a discharged employee is entitled to penalties of up to 30 days of pay at the regular pay.  Cal. Lab. Code § 203(a) ("If an employer willfully fails to pay … any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days.").

63.    It is reasonable to assume that each employee in the class waited over 30 days for payment of any allegedly unpaid wages.  *McCollum v. TGI Friday's, Inc.*, 2022 WL 2663870, at *7 (C.D. Cal. June 22, 2022) (concluding defendant's assumptions that each employee waited at least 30 days to receive their wages owed after termination (*i.e.*, the maximum penalty) was reasonable given that "plaintiff's allegations under this claim are based on the 'systematic pattern' of violations by Defendant and concern Defendant's 'fail[ure] to pay the Waiting Time Subclass all their earned wages upon termination, including, but not limited to, meal period premiums, and rest period premiums'"); *Tajonar v. Echosphere, LLC*,), 2015 WL 4064642, at *4-5 (S.D. Cal. July 2, 2015) (finding reasonable the defendant employer's assumption that each employee was entitled to the maximum thirty-day penalty); *Ramirez*, 2022 WL 1210402 at *6 (concluding a 100% violation rate is reasonable for waiting time penalties where the complaint at issue contained no guidance on the extent of the violations the plaintiff was alleging).

64.    From March 4, 2020 to March 14, 2024, there were approximately 139 former non-exempt hourly employees who separated.  (Sisk Decl. ¶ 10.)  The average hourly rate of pay for these individuals during the relevant time period is

approximately $21.24.  (*Id.*)  Assuming that these non-exempt, hourly employees are entitled to eight hours of pay for 30 days in penalties, which would be typical of Plaintiff's alleged claims, then the potential waiting time penalties amount to **$708,566.40** [$21.24 average hourly rate x 8 hours per day x 30 days x 139 employees = **$708,566.40**].

### 7.    Plaintiff's Claim for Attorneys' Fees

65.    Plaintiff further seeks attorneys' fees in association with his claims. (Ex. A., Compl., Prayer for Relief.)  Requests for attorneys' fees must also be taken into account in ascertaining the amount in controversy.  *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) (holding that claims for statutory attorneys' fees are to be included in amount in controversy, regardless of whether award is discretionary or mandatory); *Brady v. Mercedes-Benz USA, Inc.,* 243 F. Supp. 2d 1004, 1010-11 (N.D. Cal. 2002) ("Where the law entitles the prevailing plaintiff to recover reasonable attorney fees, a reasonable estimate of fees likely to be incurred to resolution is part of the benefit permissibly sought by the plaintiff and thus contributes to the amount in controversy.").

66.    The Ninth Circuit in *Arias* explicitly confirmed that "when a statute or contract provides for the recovery of attorneys' fees, prospective attorneys' fees must be included in the assessment of the amount in controversy," including in the context of determining CAFA jurisdiction and as a "principle[] that appl[ies] in CAFA removal cases."  *Arias*, 936 F.3d at 922.  In the class action context, courts have found that 25 percent of the aggregate amount in controversy is a reasonable benchmark for an attorneys' fees award under the "percentage of fund" calculation and courts may depart from this benchmark when warranted.  *See, e.g., Anderson v. Starbucks Corp.*, 556 F. Supp. 3d 1132 (N.D. Cal. 2020) (concluding courts in the Ninth Circuit have treated a potential 25% fee award reasonable for purposes of calculating the amount in controversy in CAFA cases); *Fong v. Regis Corp.*, No. C 13-04497 RS, 2014 WL 26996 at *7 (N.D. Cal. Jan. 2, 2014) ("Courts in this circuit

22

have held that, for purposes of calculating the amount in controversy in a wage-and-hour class action, removing defendants can reasonably assume that plaintiffs are entitled to attorney fees valued at approximately twenty-five percent of the projected damages.").

67. Labor Code sections 226(e), 1194, and 1194.3 authorize the recovery of reasonable attorneys' fees in actions for the recovery of unpaid wages, unpaid meal and rest premiums, waiting time penalties, and statutory penalties for inaccurate wage statements.  Assuming that Plaintiff is able to recover attorneys' fees equal to 25% of the amount recovered for his purported claims for unpaid wages, meal period and rest break violations, waiting time penalties, unreimbursed business expenses, and inaccurate wage statements (excluding any attorneys' fees for injunctive relief or interest), the amount of attorneys' fees in controversy is at least **$1,030,325.50.**

### 8. Approximate Aggregate Amount in Controversy

68. Although Defendant denies Plaintiff's allegations that he or any non-exempt California employee or member of the putative class is entitled to any relief for the above-mentioned claims, based on the foregoing calculations, the aggregate amount in controversy for the putative class for the asserted claims, exclusive of interest or costs, is approximately **$5,151,627.66,** calculated as follows:

| | |
|---|---|
| Unpaid Wages and Overtime Claims | **$1,801,550.25** |
| Unpaid Meal Period Premiums Claim | **$576,496.08** |
| Unpaid Rest Premiums Claim | **$864,744.12** |
| Unreimbursed Business Expense Claim | **$9,395.31** |

DEFENDANT RADIOLOGY PARTNERS MANAGEMENT, LLC'S NOTICE OF REMOVAL

| Wage Statement Violation Claim | $160,550.00 |
|---|---|
| Waiting Time Penalties Claim | $708,566.40 |
| Attorneys' Fees | $1,030,325.50 |
| **Total** | **$5,151,627.66** |

69.     The figures above do not take into account damages or penalties associated with claims for failure to maintain business records, failure to pay wages timely during employment, the monetary cost associated with Plaintiff's requested injunctive relief, interest, or costs.  Taking into account a *reasonable* assumption for any of these claims would contribute to the minimum amount in controversy. *Jauregui v. Roadrunner Transp. Servs., Inc*., 28 F.4th 989, 993 (9th Cir. 2022) (citing *LaCross v. Knight Transp. Inc*., 775 F.3d 1200, 1201 (9th Cir. 2015)).

70.     As set forth above, the amount Plaintiff has placed in controversy easily satisfies CAFA's $5,000,000 requirement.  Indeed, using a conservative estimate, the total amount in controversy is at least **$5,151,627.66**

## V.    VENUE

71.     Venue lies in the United States District Court for the Central District of California pursuant to 28 U.S.C. sections 1441, 1446(a), and 84(a).  This action originally was brought in the Los Angeles County Superior Court of the State of California, which is located within the Central District of California.  28 U.S.C. § 84(a).  Therefore, it is properly removed to this District.

## VI.    NOTICE OF REMOVAL TO STATE COURT AND TO PLAINTIFF

72.     This Notice of Removal will be promptly served on Plaintiff and filed with the Clerk of the Los Angeles County Superior Court of the State of California, as required under 28 U.S.C. § 1446(d).

24

DEFENDANT RADIOLOGY PARTNERS MANAGEMENT, LLC'S NOTICE OF REMOVAL

## VII.   PRAYER FOR REMOVAL

73.   **WHEREFORE**, Defendant Radiology Partners Management, LLC prays that this civil action be removed from the Los Angeles County Superior Court of the State of California, to the United States District Court for the Central District of California.

Dated:  April 5, 2024                                      **DUANE MORRIS LLP**

By*: /s/ Poline Pourmorady*
Gerald L. Maatman, Jr.
Jennifer A. Riley
Nick Baltaxe
Poline Pourmorady
RADIOLOGY PARTNERS
MANAGEMENT, LLC

DEFENDANT RADIOLOGY PARTNERS MANAGEMENT, LLC'S NOTICE OF REMOVAL